**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| KENON DURELL SWEAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:08CV630 |
| | ) | 1:05CR280-3 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**History and Pending Motions**

Petitioner Kenon Durell Sweat, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 53.)[1] Petitioner was indicted in a superseding indictment on one count of bank robbery in violation of 18 U.S.C. § 2113(a), one count of bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(a) & (d), one count of carrying and using, by brandishing, a firearm during a bank robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Docket No. 25.) Petitioner went to trial on these charges and was found guilty on all counts. (Docket No. 32.) He was sentenced to 276 months of imprisonment for the two bank robbery charges, a concurrent 276 months of imprisonment for the possession of a firearm after a felony

---

[1]This and all further cites to the record are to the criminal case.

conviction charge, and a consecutive 84 months of imprisonment for the brandishing a firearm charge. (Docket No. 42.)

Petitioner did file a direct appeal, which was denied. (Docket Nos. 50, 51.) He then filed a motion for discovery seeking certain discovery materials, transcripts, and other documents in order for him to prepare his § 2255 motion. (Docket No. 52.) He filed his § 2255 motion three months later. (Docket No. 53.) About a month and a half after that, and before Respondent had filed a response to the original motion, Petitioner filed a motion to amend his § 2255 motion. (Docket No. 57.) Respondent later filed a response to both the original and amended § 2255 motions. (Docket No. 70.) Petitioner has filed a reply (docket no. 72), as well as a motion to strike a supporting affidavit filed by Respondent (docket no. 73). All of the pending motions are now before the Court for decision.

Turning first to the motions other than the § 2255 motion, Petitioner's motion for discovery will be denied. The purpose of the request for discovery was to allow Petitioner to prepare his § 2255 motion. Despite not having the requested discovery documents, he was able to adequately set out his claims in both his original and amended § 2255 motions. Therefore, it appears that the discovery is unnecessary.

Petitioner's motion to amend, on the other hand, will be granted. That motion was filed prior to Respondent filing a response and Respondent was able to deal with the claims added in the motion at the time it eventually did file its response. For

this reason, the motion to amend is granted and all of Petitioner's claims from both his original § 2255 motion and his motion to amend will be considered.

Finally, Petitioner has filed a motion to strike an unsworn affidavit attached to Respondent's response brief.  Because the challenged affidavit is not critical to a decision on the § 2255 motion, it will not be considered.  This moots the motion to strike the affidavit and it will be denied.  Only the § 2255 motion, as amended by Petitioner, remains to be decided.

### Claims in the § 2255 Motion

Petitioner raises a number of claims for relief in his original and amended § 2255 motions.  Petitioner's first claim is that the Court lacked jurisdiction to try him because the grand jury never examined and approved the indictment in his case.  His basis for this claim is an assertion that this Court's records do not show that the foreperson of the grand jury filed a letter or certificate with the Clerk listing the twelve grand jurors who concurred in approving the indictment.  His basis for this claim is that there is no docket entry showing the concurrence sheet being docketed under seal.

Petitioner's second, third, and fourth claims all rely on the same basic assertion as his first claim.  His second claim alleges ineffective assistance of counsel based on counsel's failure to investigate the lack of jurisdiction to try the case.  His third claim alleges ineffective assistance of counsel for failing to move to dismiss the indictment because no certificate of concurrence was

filed.  Finally, his fourth claim argues that the prosecution of his case constituted malicious prosecution and misconduct because Respondent proceeded while knowing that the indictment was invalid.

Petitioner's fifth claim for relief is yet another claim of ineffective assistance of counsel, but this one does not rely on problems with the indictment.  Instead, Petitioner claims a "conflict of interest" because trial counsel stated at one point in open court that he trusted the prosecutor with his life.  He also complains that counsel advised him to continue the trial when the trial judge was considering a mistrial.  In Petitioner's amendment to his motion, he adds further allegations that counsel did not let him view, and did not move to suppress, statements made by two co-defendants, did not interview two witnesses who gave descriptions of the bank robber that did not match Petitioner, and advised Petitioner to take the witness stand at trial, but did not tell him that doing so would reveal his prior convictions to the jury.

Petitioner's sixth, and final, claim returns to the charging documents in his case and contends that his conviction is invalid because there is no proof that a complaint was filed in his case prior to the indictment being issued.  Petitioner again points to the lack of a docket entry showing that a complaint was issued.

## Discussion

### Claims One Through Four

Petitioner's first four claims are all based on the same premise regarding the lack of any docket entry showing that the grand jury foreman filed a "letter or certificate of concurrence."

-4-

Petitioner states that such a filing is required by Fed. R. Crim. P. 6(c). Petitioner also mentions Fed. R. Crim. P. 6(f), which requires the return of the indictment by the foreperson to a magistrate judge in open court if, and only if, twelve grand jurors concur on the indictment. Petitioner believes that the lack of any docket entry showing that the filing of a "certificate of concurrence" was submitted or that an indictment was returned in open court is proof that these events did not occur.

Petitioner's first four claims all fall together because they are premised on a basic misunderstanding of this Court's operating procedure. It is true that Fed. R. Crim. P. 6(c) does require that the foreman of the grand jury record the number of grand jurors concurring in the indictment and submit that record to the clerk. Also, Fed. R. Crim. P. 6(f) does require that indictments be returned in open court. However, neither of those rules requires those events to be docketed in the criminal case. Further, it is the practice in this Court that those events are not docketed. Therefore, while the regular practice of this Court is that no indictment is issued in this District unless the requirements of Rule 6(c) and (f) have been met, the return of the indictment in open court and the number of jurors concurring in the indictment are never listed on the docket sheet of the ensuing criminal case. This means that the absence of those events on the docket sheet is in no way an indication that Petitioner's indictment is invalid.

The fact that a lack of docket entries means nothing for Petitioner is a problem that proves fatal to his deficient

-5-

indictment claims. This is because the lack of entries was the one piece of evidence that he cited in support of his claims. Without that evidence, he is left with nothing to create any inference that the requirements of Rule 6 were not met in his case. His claim that they were not is entirely speculative and conclusory and he is not entitled to proceed with such claims. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992).[2] Petitioner has not established that the Court did not have jurisdiction through a valid indictment, that counsel erred in not investigating the question or in not moving to dismiss the indictment, or that the prosecutor improperly proceeded with an invalid indictment. Petitioner's first four claims for relief should be denied.

## Claim Five

Petitioner's fifth claim for relief alleges that his attorney provided him with ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson, 971 F.2d at 1136 (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim

---

[2]Petitioner does not appear to be seeking the release of the document recording the number of concurring grand jurors in his case. However, to the extent that he may be, that release can occur only with a court order. Fed. R. Civ. P. 6(c). He has given no grounds that would entitle him to such an order in this case.

might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Petitioner's first contention is that his attorney had a conflict of interest because he had too close a relationship with the prosecutor in the case. He bases this assertion on a statement made by counsel during trial that the prosecutor had "never been unethical. I have no problem with him doing that. I trust him with my life. He's one of the best persons I've dealt with, so I'm not going to place any objection . . . ." (Docket No. 46 at 161.) Petitioner claims that this statement shows undue loyalty to the government and that his attorney was vouching for the prosecution in the case.

It is true that counsel did make the statement quoted by Petitioner. Still, like any other statement from a transcript, it cannot be fully and properly evaluated unless it is considered in context. At a time when the jury was not present in the courtroom, the trial judge noted that there was a chance of snow the following morning and discussed the progression of the trial with the attorneys in order to properly advise the jury of how to deal with any weather conditions. (Id. at 158-160.) After defense counsel

-7-

discussed the likely length of his case, the prosecutor stated that he might finish sooner than anticipated, but that his answer depended on consultation with the witness who had been on the stand at the start of the break in proceedings. The prosecutor was understandably hesitant to consult alone with a witness in the middle of his testimony. (Id. at 160.) The trial judge stated that it was possible that he could ask the witness only about scheduling and not the testimony itself. However, the prosecutor continued to express hesitancy. It was at that point that defense counsel made the statement quoted by Petitioner. (Id. at 161.)

Placed into context, counsel's statement does not suggest a conflict of interest. He was merely stating that he trusted the prosecutor to ask the witness about scheduling without discussing testimony. The statement was made out of the presence of the jury. Defense counsel did not vouch for the prosecutor in front of the jury. The statement was one of ordinary professional courtesy, not an expression of undue loyalty to the prosecutor. Petitioner's claim that there was a "conflict of interest" fails for a lack of any proof.

Petitioner's next contention is that his counsel failed to move for a mistrial when he had an opportunity to do so. While testifying, an agent for the FBI happened to mention that he worked as part of the violent crimes task force. (Id. at 182.) The trial judge became concerned that the mention of that task force might prejudice Petitioner in the jurors' minds. He then called a bench conference and told the attorneys that he intended to instruct the

jury to disregard the mention of the task force. (<u>Id.</u> at 183.) When the task force was mentioned again, the trial judge sent the jury out of the courtroom. He expressed concern that the mention of the task force could cause the jury to believe that there was something especially violent about the bank robbery in the present case. He stated that he was considering a mistrial if the defense requested it. (<u>Id.</u> at 184-85.) He did note, however, that nothing would prevent the government from reindicting and retrying Petitioner, perhaps even on modified charges. (<u>Id.</u> at 185.) Defense counsel stated that he and Petitioner were discussing the matter and believed that the harm caused was "minuscule." He acknowledged that giving the government a chance to fix any problems at a retrial might not be in Petitioner's best interest. However, he asked for, and was given, time to discuss the matter with Petitioner. After their discussion, counsel reported that Petitioner wished to continue with the trial. The trial judge then confirmed the correctness of that statement by directly questioning Petitioner, who answered that he did wish to continue. (<u>Id.</u> at 186.) Counsel did not move for a mistrial, but the jury was instructed to disregard any mention of the violent crimes task force. (<u>Id.</u>)

Again, Petitioner has failed to introduce any evidence of an error by counsel or of any prejudice. He and counsel discussed the question of whether or not to move for a mistrial. In doing so, they weighed the possibility of harm from the mention of the task force against the possibility that the government would produce a

-9-

stronger case at a retrial. In the end, they made the strategic decision to proceed and accept a cautionary jury instruction. Strategic decisions of counsel are entitled to great deference. See Strickland, 466 U.S. at 690-91. Petitioner also independently stated his agreement with this decision on the record. Petitioner claims in his amended petition that counsel "coerced" him into this decision, but does not support that statement with any evidence to explain how the alleged "coercion" occurred. Clearly, counsel advised Petitioner to continue, but advice is not the same as improper coercion.

Petitioner also cannot show any prejudice from the decision to proceed. There was strong evidence against Petitioner in the form of testimony by his co-defendant Timothy Bolton that Petitioner had participated in the robbery by planning it and by driving Bolton to the bank. Bolton testified that he robbed the bank after Petitioner dropped him off and that he then ran to the car of another co-defendant, Omari Brunson, who had followed them to the scene. (Docket No. 46 at 100-101, 103-106.) Brunson and Bolton fled the scene after hiding the money at a nearby apartment complex. (Id. at 108-109.) Petitioner was already gone. Later, Petitioner, Brunson, Bolton, and another man returned and retrieved the money. (Id. at 114-115.) There was also testimony by an FBI agent that Petitioner had voluntarily confessed to participating in the manner described by Bolton. (Id. at 146-148.)

Petitioner, on the other hand, testified that he was with Bolton and Brunson in a restaurant parking lot on the morning of

-10-

the robbery when he heard them planning the robbery. He claimed to have told them that he was not going to be involved. He then left the area to spend the day at his baby's mother's house. (Id. at 204-206.) He testified that he had nothing to do with the robbery at any point.

The case really came down to Petitioner's testimony against that of Bolton and the agent. There is no real likelihood that any mention of the violent crime task force played a part in the jury's decision to credit Bolton and the agent's testimony. Nor is there any real likelihood that a retrial would have obtained a better outcome for Petitioner. Petitioner has failed to show either error by counsel or any prejudice related to the decision not to seek a mistrial. This claim should be denied.

Petitioner's next allegation is that defense counsel did not either suppress or use for impeachment statements made before trial by his co-defendants. Petitioner claims that counsel told him before trial that the two co-defendants had made prior statements, including one in which Bolton claimed that Brunson had forced him to commit the robbery by pointing a gun at him and that he committed the robbery because he owed Petitioner money. Petitioner states that he told counsel to "suppress these statements prior to trial so that he could impeach his co-defendant's [sic]." He adds that counsel did not do so and that the outcome of the trial might have been different if Petitioner "had been able to see these statements or suppress them." (Docket No. 57, Amended Motion at 3.)

-11-

Petitioner's claim is somewhat confusing given that he claims to have wished to pursue the opposite strategies of suppressing the statements and using them at trial for impeachment. It may be that he does not understand the meaning of these terms. In any event, he has pointed to no grounds for suppressing the statements. Any claim that they could have been suppressed is entirely conclusory.

As for impeachment, Bolton's prior statements were used to impeach him on cross-examination. When Petitioner's counsel pointed to those statements, Bolton was forced to admit that he made them, that he was lying at the time he made them, and that his motive in making them was to escape responsibility for the robbery. (Docket No. 46 at 132-34.) It is not clear how establishing that a key witness was willing to lie in order to save himself could have been error by counsel or could have prejudiced Petitioner. As for any statements by Brunson, he did not take the stand. Therefore, the details of his statements were essentially suppressed and could not have been used for impeachment. Finally, to any extent that Petitioner is claiming that he was harmed because counsel did not show him the prior statements, this claim is conclusory. Petitioner himself states that counsel informed him of the statements' contents. It is not clear how viewing the statements could possibly have made any difference. This claim fails for being conclusory and because Petitioner has not shown any error by counsel or any prejudice from counsel's conduct.

Petitioner's next claim is that counsel failed to interview eyewitnesses to the robbery. He claims that those witnesses'

-12-

descriptions of the robber who entered the bank do not match his description. Although Petitioner is quite correct on this point, it is also irrelevant. No claim was made that Petitioner was the person who entered the bank. His only alleged roles in the robbery were planning it, driving Bolton to the bank, and helping to retrieve the money. Naturally, the witnesses' descriptions of the robber in the bank did not match him. This claim fails because Petitioner has again shown neither error by counsel nor any prejudice.

Petitioner's final claim is that his attorney failed to advise him, prior to Petitioner taking the stand, that his criminal record would be revealed if he chose to testify. Assuming only for the sake of argument that this is the case, Petitioner can still show no prejudice. Petitioner's co-defendant, Bolton, had testified that Petitioner participated in the robbery. An FBI agent had testified that Petitioner had confessed to participating in exactly the manner described by Bolton. Petitioner's defense was that he was at the residence of his baby's mother at the time of the robbery. Although that person did take the stand, she could not be specific about what times of the day Petitioner was actually present at her residence on the day of the robbery. (Docket No. 47 at 33-38.) Therefore, she did not fully support his alibi. Had Petitioner failed to take the stand, the case against him would have been essentially unopposed. He cannot show that this would have produced a better outcome than him taking the stand, having his prior record exposed, and telling his story to the jury. Even

if Petitioner did not know that his record would be revealed if he took the stand, he was not prejudiced. Taking the stand was the only viable way for him to defend the case. Petitioner's final claim of ineffective assistance of counsel fails and this claim should be denied.[3]

**Claim Six**

Petitioner's final claim for relief argues that his indictment is invalid because no complaint was ever issued in his case. This claim is meritless. Although it is quite true that no complaint was issued in his case, there is also no requirement that a complaint be issued where a criminal defendant is indicted.[4] The fact that no complaint was issued in his case does not affect his indictment in any way. His sixth claim for relief should be denied.

**IT IS THEREFORE ORDERED** that Petitioner's motion to amend (docket no. 57) is granted and that his motions for discovery (docket no. 52) and motion to strike (docket no. 73) are denied.

---

[3]In his reply brief, Petitioner states at one point that counsel should have moved to suppress his confession. However, he gives no possible grounds for filing a motion to suppress. To the extent that he is attempting to raise a claim, it should be denied for being conclusory.

[4]Petitioner cites Fed. R. Crim. P. 3 and 4 for the proposition that an arrest warrant may only issue upon the issuance of a complaint. This is not what these rules state. Although arrest warrants can issue following a complaint, they can also be issued following an indictment.

-14-

**IT IS RECOMMENDED** that Petitioner's motion to vacate, set aside, or correct sentence (Docket No. 53) be denied and that Judgment be entered dismissing this action.


         /s/ Donald P. Dietrich
         **Donald P. Dietrich**
     **United States Magistrate Judge**


June 15, 2009